UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **DOUGLAS E. BLANCHARD** | * | **CIVIL ACTION NO. 06-1545** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Douglas E. Blanchard, born November 11, 1956, filed an application for disability insurance benefits on November 23, 2004, alleging disability as of July 28, 2004, due to back pain.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Mark A. Walker dated July 29, 2004**. Claimant complained of lower back pain radiating into his right leg after he lifted a five-gallon bucket of water and felt something pull in his lower back. (Tr. 68). The assessment was lumbosacral strain with right leg symptoms. He was restricted from heavy lifting or recurrent bending for 10 days. (Tr. 69).

**(2) Examination by Dr. Gregory A. Redmann dated October 6, 2004**. Claimant complained of lower back pain radiating down the posterior aspect of both legs to the tops and bottoms of the feet. (Tr. 71). He also reported bilateral leg numbness, tingling, and weakness. EMG examination revealed a moderate to severe right-sided L5 radiculopathy and a moderate left-sided S1 radiculopathy.

**(3) Report from Dr. John C. Steck dated December 27, 2004**. Claimant complained of back pain radiating into both legs, right greater than left. (Tr. 73). On examination, he had a negative straight leg raise. (Tr. 74). He had normal strength, sensation, and reflexes in the extremities.

Dr. Steck's impression was that claimant was having symptoms consistent with lumbar spinal stenosis, but had a fair amount of back and leg pain. He was neurologically intact, and had degenerative changes across three lumbar spinal

segments. He opined that claimant was a theoretical surgical candidate, either for a decompression at 4-5 and 5-1 versus decompression and stabilization. However, he believed that claimant was at significant risk for failure with either of these approaches. He recommended continued conservative care with aggressive physical therapy.

**(4) Records from Dr. Christopher Cenac dated August 4, 2004 to January 25, 2005**. On August 9, 2004, claimant complained of low back pain after an injury on July 28, 2004. (Tr. 88). Reflex and sensory testing was normal. Motion was limited with pain. Muscle spasm was present. Motor function was symmetrical. Straight leg raise examination was markedly abnormal at 60-70 degrees on the right. X-rays were normal.

Dr. Cenac opined that claimant had evidence of nerve root compression. He recommended medications and disability.

An MRI showed multi-level disc degeneration, and a left-sided disc protrusion at L5-S1. (Tr. 87). Epidural injections gave no relief. (Tr. 83, 86).

A myelogram dated November 9, 2004, showed mild impressions upon the thecal sac at L3-4 and L5-S1 with a moderate impression at L-5. (Tr. 82). A post-myelogram CT showed moderate left paracentral disc protrusion with moderate central canal stenosis with effacement of the left lateral recess, mild broad-based disc

bulges at L3-4 and L5-S1, and a conjoined L5-S1 nerve root on the right. (Tr. 81).

Dr. Cenac's diagnosis was a large L4-5 left eccentric disc protrusion with stenosis. (Tr. 80). He recommended a second opinion by a spine specialist. On January 25, 2005, Dr. Cenac stated that claimant was at MMI for all injuries sustained in the incident on July 28, 2004. (Tr. 77). He assigned a 5% anatomical impairment. He opined that claimant was employable at a medium level with a 50-pound lifting restriction. Dr. Cenac discharged claimant.

**(5) Consultative Examination by Dr. Steven Davidoff dated January 8, 2005**. Claimant complained of back pain radiating down his back into his buttock to his feet. (Tr. 95). He could dress and feed himself, stand at one time for 30 minutes, stand for four hours over an eight-hour period, walk on level ground 200 feet, sit for 30 minutes to an hour, and lift about 20 pounds. He could drive, cook, do dishes, and shop.

On examination, claimant was 72 inches tall and weighed 191 pounds. He had normal ambulation getting on and off the exam table and off and out of the chair. (Tr. 96). He had normal ability to dress and undress himself.

Claimant had 2+ pedal and radial pulses. His gait was normal. Grip strength was 5/5. Claimant was able to walk on his heels and toes.

Neurologically, claimant was alert and oriented times three. He had appropriate affect. Motor was 5/5 in all extremities. Sensory exam was within normal limits. Deep tendon reflexes were 2+ patellofemoral.

Dr. Davidoff's impression was that claimant had a complaint of back pain with mildly decreased lumbar flexion, who brought in an old MRI report showing an L5-S1 disc bulge and an EMG showing documented reproducible radiculopathy. He noted, however, that claimant had negative straight leg raises. Claimant had no evidence of sciatica. He did not require an assistive device. He was able to walk on his heels and toes. Dr. Davidoff opined that likely, claimant just could not lift objects greater than 10 or 15 pounds. (Tr. 97).

**(6) Residual Functional Capacity ("RFC") Assessment – Physical dated January 25, 2005**. The evaluator determined that claimant could occasionally lift and carry 20 pounds, and frequently lift/carry 10 pounds. (Tr. 99). He could stand, walk, and sit about 6 hours in an 8-hour workday. He had unlimited push-pull ability. The medical evidence did not support that claimant had a severe disability. (Tr. 103).

**(7) Report from Dr. Jeffery Fitter dated April 27, 2005**. Claimant complained of persistent, rather severe lower back pain which predominantly radiated into the right leg, with milder discomfort in the left leg. (Tr. 108). He was unable to tolerate any activities above the sedentary level, as these increased his discomfort

5

significantly.

On examination, claimant was 6 feet tall and weighed 190 pounds. He looked a bit uncomfortable walking into the exam room, and limped mildly on the right leg. On lumbar exam, he had fairly marked restriction of motion, with 50 degrees forward flexion and more severely limited lateral bending in each direction. He complained of pain at the L4 level, which radiated into the buttocks, but appeared more tender at the right sacroiliac and buttock. He had poor reversal of the lumbar lordosis on flexion, and questionable spasm in the lumbar musculature.

On lower extremity neurologic examination, right straight leg raise in the sitting position was positive at about 65 degrees, while left straight leg raise became just mildly positive at 90 degrees. Claimant did not have any sensory or motor changes, but the right tendo Achilles reflex appeared hypopactive compared to the left on careful examination.

Dr. Fitter's impression was chronic lumbar radiculopathy, disc rupture, and resulting stenosis. According to claimant's history, physical findings, and available medical records, claimant remained quite severely symptomatic from his injury of July, 2004. Dr. Fitter placed him at the sedentary or perhaps light level of physical activity on the job. He noted that claimant had some quite significant findings both on physical examination and in his diagnostic studies. He agreed with Dr. Steck that

claimant had several poor prognostic indicators for successful surgery. (Tr. 109).

Dr. Fitter was not optimistic that claimant would improve without surgical treatment. (Tr. 109). He rated claimant's whole person impairment at 10%, which would leave him unemployable in any manual occupation. He opined that if claimant did not have surgery, he was at maximum medical improvement.

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on March 24, 2006, claimant was 49 years old. (Tr. 113). He was 6 feet, one inch tall, and weighed 190 pounds. (Tr. 114). He had completed the seventh grade. (Tr. 115).

Claimant had past work experience as an assistant engineer. He had worked on and off for about 15 years. He had stopped working after he got hurt on July 28, 2004.

Regarding complaints, claimant testified that he had pain from the middle of his back down his right leg. (Tr. 122). He also had numbness in his legs. He stated that was taking Advil or Ibuprofen for pain, and did not have any money to get prescriptions filled. (Tr. 116, 121).

As to activities, claimant testified that he watched television most of the day. (Tr. 116). He spent most of the day sitting in his recliner or on the couch. (Tr. 119). He reported that he spent about 40% of the day in a reclined position, because he got cramps in his legs which caused numbness in his back. (Tr. 120). He said that he did

not want to have surgery, because there was a chance that he could get paralyzed.

Regarding limitations, claimant stated that he could lift about 10 pounds, walk about 100 feet, and sit and stand for 20 to 30 minutes. (Tr. 117). He stated that he would be able to stand about an hour or so in an eight-hour period, then rest. (Tr. 118). He believed that he could walk about two hours out of an eight hour period. (Tr. 119). He reported that sudden movements, walking, or sitting down aggravated his back pain. (Tr. 117).

Additionally, claimant stated that he was unable to stoop, bend, squat, or crawl. (Tr. 125). He also said that he could not lift overhead, or lift more than 10 pounds.

**(9) Administrative Hearing Testimony of Mary Ellen Kelly, Vocational Expert ("VE")**. Ms. Kelly described claimant's past work as heavy and skilled. (Tr. 126). The ALJ posed a hypothetical in which he asked the VE to assume a claimant who was a younger individual with a limited education; who was restricted to a light RFC, lifting 10 pounds frequently and 20 pounds occasionally; could be on his feet two-thirds of a day for eight hours a day, five days a week, and should avoid ladders, scaffolds, ropes, unprotected heights, and excessive vibration. (Tr. 126-27). In response, Ms. Kelly testified that he could not do his past work, but could work as a cashier, of which there were 1,800 positions statewide and 908,000 nationally; stock clerk, of which there were 2,000 jobs statewide and 167,000 nationally, and inspector

or tester, of which there were 1,000 statewide jobs and 133,000 nationally. (Tr. 127).

Claimant's attorney modified the hypothetical to assume a claimant who could walk no more than 1 hour in an 8-hour day; stand no more than 2 hours per day; sit no more than 1 hour per day; lift a maximum of 10 pounds; had to maintain himself in a reclined position 40 to 50% of the workday; could not bend, crawl, stoop, or kneel, and would be unable to lift objects either in front or above shoulder level on a repetitive basis. (Tr. 127-28). In response, Ms. Kelly testified that claimant would not be able to perform any work. When the attorney adjusted the hypothetical to limit claimant to walking and sitting no more than 1 hour per day, and standing no more than 2 hours a day, the VE responded that such claimant would not be able to work on a full-time basis. The attorney then posed a third hypothetical, in which the claimant had to stay in a reclined position for 40 to 50% of the working day, to which Ms. Kelly responded that such individual would be unable to perform any work. (Tr. 128).

**(10) The ALJ's findings are entitled to deference**. Claimant argues that the ALJ erred: (1) in failing to consider the effect of claimant's RFC on the jobs he could perform, and in ignoring the vocational expert's testimony that he could perform neither his past relevant work nor any other jobs in the national or regional economies based on his limited ability to function; (2) in failing to find that he met the listing at

§ 1.04, and (3) in failing to consider the "worn out worker" rule.

As to the first argument, claimant asserts that the ALJ failed to consider his testimony that he could lift no more than 10 pounds, stand no more than 30 to 40 minutes at a time and no more than 1 hour total, walk about 100 feet in 2 to 3 minutes and no more than 2 total hours in an 8-hour day, sit upright in a working position for 20 to 30 minutes, and had to lie or recline 40 to 50% of his waking hours. [rec. doc. 7, pp. 7-8]. He further contends that the ALJ failed to consider the vocational expert's answers to hypothetical questions posed by claimant's attorney, which indicated that claimant could neither perform his past work or any other work that existed in the national or regional economies based on these limitations. [rec. doc. 7, pp. 8-10].

However, the ALJ found that these limitations were not supported by the objective evidence. (Tr. 15-17). Specifically, he determined that claimant's testimony that he could sit, stand, and walk only 4 hours in an 8-hour workday was not credible in view of mild pain, Dr. Cenac's statement that he could lift 50 pounds, and Dr. Steck's assignment of 10% disability as a whole person. (Tr. 15). He further noted that Dr. Fitter said only that claimant should do no manual labor, not that he could not work at all.

The undersigned finds that the ALJ's conclusion as to his RFC are supported by the evidence.  On discharge of claimant, his treating physician, Dr. Cenac, determined that claimant was "employable at a medium level  of physical activity with 50 lbs. lifting restrictions applicable." (Tr. 77).  Additionally, the consultative examiner, Dr. Davidoff, determined that "[l]ikely, [claimant] just can't lift objects greater than 10 or 15 pounds." (Tr. 97).  Further, Dr. Fitter found that while claimant was unable to return to his previous job as an oiler, he could perform "sedentary or perhaps light level of physical activity on the job." (Tr. 108).

It is well established that the  ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ.  *See Owens v. Heckler,* 770 F.2d 1276, 1282 (5th Cir.1985); *Falls v. Apfel*, 2000 WL 329233, *7 (E.D. La.2000).  Here, the ALJ rejected claimant's testimony based on the evidence from his treating physicians.  (Tr. 15).  As the ALJ's hypotheticals to the vocational expert reasonably incorporated all disabilities of the claimant recognized by the ALJ, and the claimant or her representative had the opportunity to correct deficiencies in the ALJ's question, the ALJ's findings are entitled to deference.  *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Next, claimant asserts that the ALJ erred in failing to find him disabled under § 1.04, which provides as follows:

> 1.04 *Disorders of the spine*: (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
>
> With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
> or
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
> or
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §1.04.

Claimant argues that he met this listing because he suffers from a herniated nucleus pulposus, spinal stenosis and/or degenerative disc disease resulting in compromise of a nerve root compression characterized by motor loss, atrophy with associated muscle weakness accompanied by sensory or reflex loss with a positive straight leg raising test. [rec. doc. 7, p. 12]. While the records confirm that claimant had back pain, claimant has not shown that he met the criteria under § 1.04. None of the physicians – Drs. Steck, Cenac, Davidoff, and Fitter – found that he had motor

loss (atrophy with associated muscle weakness or muscle weakness), accompanied by sensory or reflex loss.   (Tr. 74, 88, 96, 108).

For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original). *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Id*.  As claimant has not demonstrated that he met the criteria under § 1.04, the ALJ's finding that claimant's impairment did not meet the listing for spinal disorders is entitled to deference.

Finally, claimant argues that the ALJ erred in failing to consider the "worn out worker" rule. [rec. doc. 7, pp. 3, 12].  Under the social security regulations, workers are worn-out if they have done "arduous unskilled physical labor" for 35 years or more, have a marginal education, and are no longer able to do arduous unskilled work. 20 C.F.R. § 404.1562; *Smith v. Shalala*, 46 F.3d 45, 46-47 (8th Cir. 1995); *Banuelos v. Chater,* 1996 WL 681261, *1 (9th Cir. 1996). "Marginal education means abilit[ies] ... which are needed to do simple, unskilled ... jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education."  *Smith, supra* (citing 20 C.F.R. § 404.1564(b)(2).  Seventh through 11th grade is termed "limited education."  Section 1564(b)(3).

The regulations make clear, however, that classroom years are not the final word in determining education level: "the numerical grade level that you completed in school may not represent your actual educational abilities. These may be higher or lower. However, if there is no evidence to contradict it, we will use your numerical grade level to determine your educational abilities." *Smith, supra* (citing section 1564(b)).

The regulations provide that the ALJ must develop information concerning a claimant's education by asking about school attendance, oral and written verbal skills, and ability to do simple calculation. Section 1564(b)(6). Here, the ALJ made such inquiries; claimant testified that he attended school through the seventh grade. (Tr. 115). Nowhere in the record is there any evidence that claimant does not have the skills expected from a limited education. In fact, the Function Report indicates that claimant read and completed his own form; therefore, it appears that he is able to read and write adequately. (Tr. 38-45). Section 1564(b). Based on the evidence, claimant has a limited rather than a marginal education. Accordingly, the worn-out worker rule of section 1562 does not apply.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed this July 22, 2007, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE